Filed 7/27/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JAMS, INC., et al., | D069862 |
| Petitioners, | (San Diego County Super. Ct. No. 37-2015-00026133-CU FR-CTL) |
| v. | |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| KEVIN J. KINSELLA, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate. John S. Meyer, Judge. Petition denied; stay vacated.

Long & Levit, Joseph P. McMonigle, Jessica R. MacGregor, Jonathan Rizzardi; Reed Smith, Paul D. Fogel and Dennis P. Maio for Petitioners.

No appearance for Respondent.

Bravo Law Group, Gregory L. Cartwright; Goode Hemme & Peterson, Jerry D. Hemme; Jenkins and Erik C. Jenkins for Real Party in Interest.

INTRODUCTION

This action arises from representations made on the JAMS, Inc. (JAMS) Web site regarding the background of the Honorable Sheila Prell Sonenshine (Retired), and JAMS's operations in offering alternative dispute resolution (ADR) services. Kevin J. Kinsella alleges he relied upon certain representations made on the Web site when he agreed to stipulate to hire Sonenshine as a privately compensated judge to resolve issues related to his marital dissolution case and later discovered the representations were either untrue or misleading.

JAMS and Sonenshine filed an anti-SLAPP (Code Civ. Proc., § 425.16)[1] motion to strike Kinsella's complaint. The court found the action exempt from the anti-SLAPP procedure under the commercial speech exemption of section 425.17, subdivision (c). JAMS and Sonenshine filed a petition for writ of mandate or other relief. We stayed the proceedings and issued an order to show cause why relief should not be granted to allow us the opportunity to consider the issues raised in the petition related to the scope of the commercial speech exemption of section 425.17, subdivision (c). (See *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1273 [writ review appropriate to decide issues of widespread interest].) Having now considered the matter, we agree the

---

[1]     "Code of Civil Procedure section 425.16 provides a procedure for the early dismissal of what are commonly known as SLAPP suits (strategic lawsuits against public participation)—litigation of a harassing nature, brought to challenge the exercise of protected free speech rights. The section is thus informally labeled the anti-SLAPP statute, and a motion to dismiss filed under its authority is denominated an anti-SLAPP motion." (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 665, fn. 3.)
        Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

commercial speech exemption applies and precludes the use of the anti-SLAPP procedure in this case. The petition is denied.

BACKGROUND

A

JAMS provides private alternative dispute resolution services by promoting, arranging and handling the hiring of neutral individuals, such as retired judges, to assist with resolution of disputes. Kinsella alleges: "JAMS acts as the 'promoter' and as the 'booking' agent for its neutrals, procuring engagements for them through the use of advertising and marketing. The neutrals are independent contractors, with JAMS collecting a fee from the neutrals for the services it provides in connection with the advertising, marketing, promotion, and 'booking' services. JAMS, in fact, collects the fees from the consumers who pay for the services of the neutrals and JAMS in turn pays the neutrals."

JAMS allegedly "directs and controls the publication of the JAMS [Web site] and the statements made on that site." JAMS provides biographies of its neutrals on its Web site and represents its family law neutrals are " 'trusted' experts." According to the complaint, the JAMS Web site stated " '[JAMS ensures] the highest ethical standards' and '[e]verything we do and say will reflect the highest ethical and moral standards. We are dedicated to neutrality, integrity, honesty, accountability, and mutual respect in all our interactions.' "

Sonenshine is on JAMS's panel of neutrals. According to the complaint, she is a "former California Superior Court judge and a retired California [Fourth] District Court

3

of Appeal[] justice. She is held out by JAMS as a neutral available for selection as a mediator, arbitrator, referee, and [privately compensated temporary judge]."

B

Kinsella agreed to hire Sonenshine through JAMS to adjudicate his pending marital dissolution action, involving assets he states were "valued somewhere north of eight figures." These included assets from venture capital partnerships founded and managed by Kinsella. At the suggestion of his wife's attorney, Kinsella reviewed the JAMS Web site and Sonenshine's credentials. He alleged he did so carefully because he understood "the importance of selecting someone he could respect and trust to rule on the life-changing decisions" in his marital dissolution case and he wanted to "assure himself he was selecting someone who satisfied his need to have confidence in the jurist and, specifically, a person who would understand principles of business ventures and private equity funding."

He alleged, based on the JAMS representations, he expected he could rely on the "honesty and integrity" of Sonenshine's biography, which he stated "was impressive." Kinsella alleged Sonenshine "was claiming experience that evidenced sufficient business acumen to understand his separate property holdings and private venture capital funds."

The stipulation and order appointing Sonenshine as the privately compensated temporary judge for Kinsella's marital dissolution case gave Sonenshine authority "to make all orders necessary and proper to bring [the] case to judgment." After Sonenshine began conducting hearings, Kinsella alleged he "became alarmed by what he saw and doubted that she possessed the business accomplishments her resume led him to believe

4

she possessed." He began to look into her background "to determine whether her [biography] accurately reflected her career achievements, especially as they concerned her business ventures." He concluded her biography "omitted key information" causing him to question her integrity.

## C

Kinsella filed a complaint alleging Sonenshine's biography on the JAMS Web site was dishonest in two respects: (1) it "proclaimed business success surrounding the co-founding and management of [EquiCo and RSM EquiCo]" when "the history of those two ventures is full of adverse and unfavorable accusations" against Sonenshine and her son in a class action lawsuit for fraud, and (2) it "proclaimed she was the founder of the [Escher Fund], an equity fund that focused on growth-state, women-owned, and women-led businesses" when "the equity fund existed in name only as it never raised any equity capital and was, therefore, never funded" and never operated "as a functioning investment entity."

The complaint alleged Sonenshine omitted information about the class action lawsuit because it would injure her reputation, reflect poorly on her background or discourage consumers from selecting her as a neutral. It further alleged Sonenshine knew her biography was misleading in implying "the Escher Fund was an actual operating fund, one that had successfully raised equity capital, when it never was either."

As to JAMS, the complaint alleged, "[b]y representing Sonenshine to be a person of the highest ethical standards, JAMS misrepresented the nature of her qualifications as a neutral to be hired from its [Web site]. [¶] … By 'ensuring' that its neutrals conduct

5

themselves with the highest ethical standards, JAMS accredited the deception committed by Sonenshine."  (Some capitalization omitted.)

The complaint set forth four causes of action:  (1) violation of the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.) based on "deceptive representations" made on Sonenshine's biography posted on the JAMS Web site and based on "deceptive representations" made by JAMS; (2) fraud based on (a) Sonenshine's false representation she was the founder of the Escher Fund, "yet that fund never existed inasmuch as it was never funded," (b) JAMS's false representation that its neutrals act with "highest ethical standards" and JAMS acts with "integrity, honesty, accountability, and mutual respect in all our interactions," and (c) the defendants' concealment regarding Sonenshine's involvement with EquiCo and RSM EquiCo and the accusation of impropriety; (3) negligent misrepresentation; and (4) violation of Business and Professions Code sections 17200 and 17500.

The complaint stated "all allegations of wrongdoing relate to information Kinsella specifically viewed on defendant JAMS' [Web site] before he agreed to select Sonenshine as the [privately compensated temporary judge]."  (Some capitalization omitted.) Kinsella sought injunctive relief, actual damages exceeding $250,000, punitive damages, prejudgment interest, disgorgement, and restitution.

D

JAMS and Sonenshine filed an anti-SLAPP motion contending Kinsella's action arose from protected activity because the statements in Sonenshine's biography and on the JAMS Web site were made in connection with an issue under consideration by a

6

judicial body. They also contended Kinsella would be unable to show a probability of prevailing because Sonenshine had no duty to disclose the facts she purportedly omitted and, if she did, judicial immunity and/or litigation privilege bars the claim.

Kinsella moved for an order determining the allegations in the complaint are exempt from the anti-SLAPP statute under the commercial speech exemption of section 425.17, subdivision (c). JAMS and Sonenshine opposed the motion contending the statements on the JAMS Web site and in Sonenshine's online biography did not fall within the commercial speech exemption of section 425.17, subdivision (c), because (1) the exemption applies to " 'representations of fact' " not to omissions or nonfactual representations such as puffery, (2) Sonenshine's biography was not purely commercial speech because it was also used for noncommercial purposes such as for litigants to evaluate potential conflicts of interest or for dissemination to bar groups for noncommercial events.

The court determined the commercial speech exemption of section 425.17, subdivision (c), applies to this case and precludes use of the anti-SLAPP special motion to strike. The court noted "JAMS and Sonenshine are engaged in the business of selling ADR services, including private judging services, to the public. The alleged statements that form the basis of [Kinsella's] claims were posted on the JAMS[] [Web site] for the purpose of promoting and securing sales or commercial transactions in defendants' ADR services. The intended audience was [Kinsella], a party involved in dissolution litigation, who actually engaged the services of JAMS and Sonenshine."

The court determined the JAMS statements on the Web site, which promotes ADR services and "allegedly describe[] its neutrals as having the 'highest ethical and moral standards' and [state] they are 'dedicated to neutrality, integrity, honesty,' " were not mere puffery, but were statements that "can be provably false factual assertions."  The court concluded "JAMS is a for-profit enterprise.  [Its] statements regarding the trustworthiness, integrity and honesty of its enterprise as well as its neutrals is purely commercial speech.  The resume is included on the [Web site] for commercial purposes … to sell ADR services."

DISCUSSION

I

*General Principles*

SLAPP lawsuits, " ' "masquerade as ordinary lawsuits … [but] are generally meritless suits brought primarily to chill the exercise of free speech or petition rights by threat of severe economic sanctions against the defendant, and not to vindicate a legally cognizable right." ' "  (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21 (*Simpson*).)  "In 1992, out of concern over 'a disturbing increase' in these types of lawsuits, the Legislature enacted section 425.16" and "authorized the filing of a special motion to strike to expedite the early dismissal of these unmeritorious claims."  (*Ibid.*) "A special motion to strike involves a two-step process.  First, the defendant must make a prima facie showing that the plaintiff's 'cause of action … aris[es] from' an act by the defendant 'in furtherance of the [defendant's] right of petition or free speech … in connection with a public issue.'  [Citation.]  If a defendant meets this threshold showing,

8

the cause of action shall be stricken unless the plaintiff can establish 'a probability that the plaintiff will prevail on the claim.' " (*Ibid.*, fn. omitted.) The anti-SLAPP statute states it "shall be construed broadly." (§ 425.16, subd. (a).)

"In 2003, concerned about the 'disturbing abuse' of the anti-SLAPP statute, the Legislature enacted section 425.17 to exempt certain actions from it." (*Simpson*, *supra*, 49 Cal.4th at p. 21.) One such exemption is for commercial speech. Section 425.17, subdivision (c), exempts "from the anti-SLAPP law a cause of action arising from commercial speech when (1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and (4) the intended audience for the statement or conduct meets the definition set forth in section 425.17[, subdivision,] (c)(2)." (*Simpson,* at p. 30.)

"The commercial speech exemption … 'is a statutory exception to section 425.16' and 'should be narrowly construed.' " (*Simpson*, *supra*, 49 Cal.4th at p. 22.) "[T]he party seeking the benefit of the commercial speech exemption, [has] the burden of proof on each element." (*L.A. Taxi Cooperative, Inc. v. The Independent Taxi Owners Assn. of Los Angeles* (2015) 239 Cal.App.4th 918, 931.) "We review the applicability of the commercial speech exemption independently." (*Simpson*, at p. 26.)

9

## II

### *Analysis*

JAMS and Sonenshine contend the commercial speech exemption is not applicable for two reasons.  First, they contend the statements about which Kinsella complains are not "representations of fact" involving positive assertions of past or present conditions or events, but are omissions or nonactionable opinions.  Second, they contend the statements from which the causes of action arise were not made for purely commercial purposes.  We are not persuaded by either contention.

### A

We do not agree the commercial speech exemption is limited to exclude from the anti-SLAPP statute only causes of action arising from positive assertions of facts.  This contention is not supported by either the plain language of the statute or its legislative history.

Section 425.17, subdivision (c), states in pertinent part:  "Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services … *arising from any statement or conduct by that person* if both of the following conditions exist:  [¶] (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.  [¶] (2) The intended audience is an actual or potential buyer

or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer." (Italics added.)

"Under the two-pronged test of section 425.16, whether a section 425.17 exemption applies is a first prong determination." (*Demetriades v. Yelp, Inc.* (2014) 228 Cal.App.4th 294, 308 (*Demetriades*).) We do not consider whether the plaintiff has a reasonable likelihood of prevailing on the merits of his or her claims, which is the second prong of a section 425.16 analysis. (*Id*. at p. 312.) A conclusion about whether the plaintiff's claims "are the *kind* of claims the Legislature intended to exempt from the scope of the anti-SLAPP statute when it adopted section 425.17 … is entirely independent of any evaluation of the merits of those claims, or even the adequacy of [the] … pleadings." (*The Inland Oversight Committee v. County of San Bernardino* (2015) 239 Cal.App.4th 671, 678.)

"The legislative history indicates this legislation is aimed squarely at false advertising claims and is designed to permit them to proceed without having to undergo scrutiny under the anti-SLAPP statute. Proponents of the legislation argued that corporations were improperly using the anti-SLAPP statute to burden plaintiffs who were pursuing unfair competition or false advertising claims" and were being encouraged to use anti-SLAPP motions as a " 'litigation weapon to slow down and perhaps even get out of [unfair competition] litigation.' " (*Demetriades*, *supra*, 228 Cal.App.4th at p. 309.)

Responding to concerns an exemption would impact the free speech rights of businesses, the legislative history of section 425.17 indicates it was drafted to track constitutional principles governing regulation of commercial speech based upon

11

guidelines discussed in *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939 (*Kasky*).[2]  (See Assem. Com. on Judiciary, Rep. on Sen. Bill No. 515 (2003-2004 Reg. Sess.) as amended June 27, 2003, p. 8.)  In doing so, it followed "*Kasky's* guidelines on commercial speech, focusing on the speaker, the content of the message, and the intended audience." (*Id*. at p. 10.)  Commercial speech usually involves a "*speaker* [who] is likely to be someone engaged in commerce—that is, generally, the production, distribution, or sale of goods or services—or someone acting on behalf of a person so engaged, and the *intended audience* is likely to be actual or potential buyers or customers of the speaker's goods or services, or persons acting for actual or potential buyers or customers." (*Kasky*, *supra*, at p. 960.)  Additionally, "the factual content of the message should be commercial in character.  In the context of regulation of false or misleading advertising, this typically means that the speech consists of representations of fact about the business operations, products, or services of the speaker …, made for the purpose of promoting sales of, or other commercial transactions in, the speaker's products or services." (*Id.* at p. 961.)  The

---

[2]     " '[T]he [federal] Constitution accords less protection to commercial speech than to other constitutionally safeguarded forms of expression.' " (*Kasky*, *supra*, 27 Cal.4th at p. 952.)  The court noted several reasons for "withholding First Amendment protection from commercial speech that is false or actually or inherently misleading" such as (1) " '[t]he truth of commercial speech … may be *more easily verifiable by its disseminator* … in that ordinarily the advertiser seeks to disseminate information about a specific product or service that he himself provides and  presumably knows more about than anyone else,' " (2) "commercial speech is *hardier* than noncommercial speech in the sense that commercial speakers, because they act from a profit motive, are less likely to experience a chilling effect from speech regulation," and (3) "governmental authority to regulate commercial transactions to prevent commercial harms justifies a power to regulate speech that is ' "linked inextricably" to those transactions.' " (*Id.* at pp. 954-955.)

language of section 425.16, subdivision (c)(1), closely tracks *Kasky's* discussion about the content of commercial speech.

Neither the *Kasky* decision nor the legislative history indicates the content of commercial speech must be an affirmative or positive representation, as opposed to an omission or half-truth. What matters for purposes of the commercial versus noncommercial speech analysis is whether the speech at issue is about the speaker's product or service or about a competitor's product or service, whether the speech is intended to induce a commercial transaction, and whether the intended audience includes an actual or potential buyer for the goods or services. Indeed, *Kasky*, *supra*, 27 Cal.4th at page 951 recognized the unfair competition law and false advertising law "prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.' "

Here, Kinsella's causes of action against JAMS and Sonenshine arise from statements posted on the JAMS Web site regarding Sonenshine's background and qualifications to provide ADR services as well as general statements about how JAMS conducts its business in providing ADR services. These statements fit comfortably within the commercial speech exemption of section 425.17, subdivision (c).

The representations made in Sonenshine's biography are representations of fact. Whether those facts are true or whether she should have included additional facts to ensure the representations were not misleading goes to the issue of whether or not

13

Kinsella can prevail on his claim, not to whether the statements qualify as commercial speech subject to the exemption of section 425.17, subdivision (c).

The statements that JAMS ensured " 'the highest ethical standards,' " that " '[e]verything we do and say will reflect the highest ethical and moral standards' " and that JAMS is " 'dedicated to neutrality, integrity, honesty, accountability, and mutual respect in all our interactions' " are also representations of fact for purposes of analyzing the commercial nature of the speech. Although using words of emphasis, they are specific statements representing how JAMS conducts its operations with neutrality, integrity, honesty and accountability. They are certainly intended to be relied upon by customers of its services, otherwise they would serve no legitimate purpose. (*Demetriades*, *supra*, 228 Cal.App.4th at pp. 311-312.) As the trial court commented, "After all, it is the violation of these types of standards and qualities that cause Bar members to be disciplined by the State Bar." It is also worth noting the posting of Sonenshine's biography in conjunction with these statements may have implicitly represented JAMS adopted her representations about her credentials and ratified them as reflecting "integrity, honesty, [and] accountability." Again, we do not reach the issue of whether these statements are true, false, or otherwise nonactionable. Such a determination would be part of a prong-two analysis under section 425.16 regarding the merits of the claim, but is irrelevant to the commercial speech analysis required under section 425.17, subdivision (c).

The cases upon which JAMS and Sonenshine rely do not assist them. In *Simpson, supra,* 49 Cal.4th 12, the court concluded an attorney's representations about a product in

an advertisement to recruit potential plaintiffs for a class action suit did not fall within section 425.17's commercial speech exemption because the statements were not representations of fact about *the attorney's* business operations, goods or services. Since the statements were neither about the attorney's services nor those of a competitor, the plain language of commercial speech exemption did not apply. (*Id.* at p. 30.) The court also rejected a contention the advertisement's statement " ' "an attorney" will "investigate whether you have a potential claim" ' " qualified as commercial speech. The causes of action in that case arose from the advertisement's implication the product was defective, not a representation an attorney would investigate the claim. (*Id.* at pp. 30-31.) In dicta, the court commented "[i]n addition, a promise of what an attorney will do if the reader were to respond to the advertisement 'is not a representation of fact, but an agreement to take certain actions in the future.' " (*Id.* at p. 31*, quoting Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 841 (*Navarro*).)

In *Navarro,* the court held section 425.17 did not apply to allegedly false promises, made in the context of settling a lawsuit, to handle matters " 'without undue delay.' " (*Navarro*, *supra*, 134 Cal.App.4th at pp. 840-841.) In reaching this holding, the court commented "[a] promise is not a representation of fact, but an agreement to take certain actions in the future." (*Id.* at p. 841.) More to the point, however, the court concluded the statement was not made as part of a commercial transaction or to induce a commercial transaction, but rather as part of a settlement negotiation to protect its own interests. (*Ibid.*)

15

The statements about JAMS are not mere promises, but representations of fact about the neutrals it employs and how it conducts its business. These representations published on a Web site to induce litigants to engage in ADR services offered by JAMS were commercial speech for purposes of section 425.17, subdivision (c).

It bears emphasizing again our conclusions here that Kinsella's claims are the kind the Legislature intended to exempt from the scope of the anti-SLAPP statute, is separate and distinct from any evaluation of the merits of his claims, the applicability of any defenses such as judicial immunity, or even the adequacy of the pleadings. (*The Inland Oversight Committee v. County of San Bernardino*, *supra*, 239 Cal.App.4th at p. 678.)

B

JAMS and Sonenshine also contend the commercial speech exemption does not apply because the statements on the JAMS Web site might be used for multiple purposes, such as to comply with Sonenshine's judicial duty of disclosure, or because the causes of action arise from postretention conduct, not commercial speech. We do not agree.

*Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482 (*Taheri*) held the commercial speech exemption does not apply to a lawsuit filed by a law firm against another attorney for intentional interference with prospective economic advantage and intentional interference with business relations for soliciting the law firm's client. The court concluded "a cause of action arising from a lawyer's conduct, when the conduct includes advice to a prospective client on pending litigation, does not fall within the statutory exemption to the anti-SLAPP statute." (*Id*. at pp. 485, 490.) The court commented the legislative history of the commercial speech exemption confirmed "the

16

Legislature's intent to except from anti-SLAPP coverage disputes that were purely commercial." (*Id.* at p. 491.)

We do not understand the comment in *Tahari* to mean a statement giving rise to a cause of action must be purely commercial and have no other use to fall within the commercial speech exemption. The *Tahari* court noted "[a] dispute involving a lawyer's advice to a prospective client on pending litigation … while it may include an element of commerce or commercial speech, is fundamentally different from the 'commercial disputes' the Legislature intended to exempt from the anti-SLAPP statute." (*Tahari*, *supra*, 160 Cal.App.4th at p. 491.) The court acknowledged "lawyers engage in 'commercial speech' when they advertise their services" and stated "we can envisage circumstances—such as a 'massive advertising campaign' divorced from individualized legal advice—under which the commercial speech exemption to the anti-SLAPP statute conceivably might apply to a lawyer's conduct." (*Id.* at pp. 491-492.)

The issue is whether or not the statement or conduct from which the causes of action arise is speech used to induce a commercial transaction. The *Tahari* court concluded the " 'statement or conduct' " from which the causes of action arose "constituted much more than 'commercial speech'; the conduct was in essence advice by a lawyer on a pending legal matter." (*Tahari*, *supra*, 160 Cal.App.4th at p. 491.) This weighing of purposes indicates it is not an all or nothing proposition as JAMS and Sonenshine contend.

JAMS and Sonenshine are engaged in the business of selling ADR services. Kinsella's causes of action arise from statements posted on the JAMS Web site about

17

both Sonenshine's background and experience and about JAMS's operations. It is apparent all of the statements about which Kinsella complains were placed on the JAMS Web site to be viewed by actual or potential ADR buyers or customers, or attorneys representing actual or potential buyers or customers of ADR services. According to the complaint, Kinsella reviewed the JAMS Web site and agreed to use Sonenshine as a privately compensated temporary judge based on the statements. (*Simpson*, *supra*, 49 Cal.4th at p. 30.) Therefore, the statements or conduct from which Kinsella's causes of action arise is more "commercial speech" than anything else. Whether or not the statements may be used for other purposes does not change the analysis.

Finally, we do not agree that Kinsella's references to postretention statements by Sonenshine preclude application of the commercial speech exemption. Each of the causes of action focuses on the statements regarding Sonenshine's background and how JAMS operates its business. Although the complaint includes information about how Kinsella discovered problems with the information and Sonenshine's subsequent response to his challenges, he alleges each cause of action arises from the representations made on the JAMS Web site. According to Kinsella, he "does not sue for any actions taken by Sonenshine in any adjudicative capacity nor for any acts, [omissions] or defalcations committed … from the time Kinsella agreed … to allow Sonenshine to serve as the jointly retained [privately compensated temporary judge], sometime in late January 2013, after he was induced into that agreement by the false representations … . In fact, all allegations of wrongdoing relate to information Kinsella specifically viewed on defendant JAMS' [Web site] before he agreed to select Sonenshine as the [privately compensated

18

temporary judge]." (Some capitalization omitted.) Whether his causes of action, and the damages he seeks, are as limited as he asserts are matters beyond the issue relevant in this writ petition.

## DISPOSITION

For all of the reasons expressed herein, the commercial speech exemption of section 425.17, subdivision (c), applies to this action and precludes consideration of the anti-SLAPP motion. The petition is denied. The stay issued on March 7, 2016 is vacated. Kinsella is entitled to costs in this proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

_____

MCCONNELL, P. J.

WE CONCUR:


_____

HUFFMAN, J.


_____

HALLER, J.

19