Filed 12/16/21; Certified for publication 1/11/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TIFFANY YAN XU, | B311883 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20PSCV00695) |
| v. | |
| HAIDI WENWU HUANG et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gloria White-Brown, Judge. Reversed.

Amin Talati Wasserman, William P. Cole and Matthew R. Orr for Plaintiff and Appellant.

Gordon Rees Scully Mansukhani, Craig J. Mariam, Gregory S. Martin and Eunice J. Liao for Defendants and Respondents.

————————————————

Plaintiff and appellant Tiffany Yan Xu, chief executive officer of Sky Vision Insurance Company (Sky Vision), and defendants and respondents Haidi Wenwu Huang and Auchel World Inc. (Auchel) specialize in selling life insurance and providing wealth management services, particularly in the Chinese and Chinese-American communities.

In October 2020, Xu filed a defamation case against Huang, alleging that, in an effort to promote the business interests of Auchel and disrupt Xu's relationship with her clients, Huang falsely told independent insurance agents, as well as a Sky Vision client, that Xu is dishonest and unethical in her business practices and falsifies insurance documents.[1]

Huang and Auchel filed an anti-SLAPP motion under Code of Civil Procedure section 425.16,[2] arguing her statements constituted protected speech because they served the "public interest" of providing "consumer information" about Xu's fraudulent business practices. Xu argued in opposition that Huang's statements were far removed from any issues of public interest and represented nothing more than one competitor maligning another in an effort to win business. She claimed that the commercial speech exemption, separately codified at section 425.17, removed any protection from Huang's defamatory statements and, in addition, that these statements did not qualify as protected activity under section 426.16.

Wholly accepting Huang and Auchel's theory of protected activity, the trial court granted the anti-SLAPP motion,

---

[1] When we refer to Huang, we refer either to her individually or to her and Auchel, as the context requires.

[2] Undesignated statutory citations are to the Code of Civil Procedure.

emphasizing that commercial speech implicating a matter of public interest may nevertheless be protected through an anti-SLAPP motion. Without any discussion of the commercial speech exemption under section 425.17, the trial court found all of the allegations entirely to be protected under subdivision (e)(4) of section 425.16, commonly known as the "catchall provision" of the anti-SLAPP statute.

Contrary to the trial court's ruling, the anti-SLAPP statute does not protect Huang's statements because they squarely fall within the commercial speech exemption set forth in section 425.17, subdivision (c). Courts are admonished to examine section 425.17 as a threshold issue *before* proceeding to an analysis under section 425.16. Section 425.17 expressly provides that speech or conduct satisfying its criteria is entirely exempt from anti-SLAPP protection *even if* "the conduct or statement concerns an important public issue." (§ 425.17, subd. (c)(2).)

Not only do we find Huang's statements covered by the commercial speech exemption, but the trial court also erred in finding that Xu's claims arose from protected activity under section 425.16, subdivision (e)(4). The *context* in which statements are made holds significant sway in terms of whether they are considered to be in furtherance of free speech in connection with a public issue under subdivision (e)(4) of section 425.16. Huang's alleged slander of a competitor in a private setting to solicit business is neither speech in furtherance of the exercise of the constitutional right of petition nor the constitutional right of free speech in connection with a public issue.

Accordingly, we reverse the trial court's order granting the anti-SLAPP motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Sky Vision is alleged to be a leading insurance general agency and broker of insurance policies for the Chinese and Chinese-American communities. Sky Vision also provides wealth management services. With offices in San Marino, Irvine, and Diamond Bar, Sky Vision has a California network of approximately 1,000 affiliated insurance agents.

Xu has managed Sky Vision since its inception in 2008 and has worked in the insurance and wealth management sectors for many years. Her professional reputation is closely intertwined with Sky Vision's reputation in the industry and among insurance agents and clients.

Auchel does business as Grand Prospects Financial & Insurance Services. Auchel competes with Sky Vision in the market for high-wealth life insurance policies and wealth management solutions for Chinese and Chinese-American communities. Huang is Auchel's president and a member of its board of directors.

On October 16, 2020, Xu filed a complaint against Huang and Auchel asserting two causes of action: defamation and civil conspiracy.[3] Xu alleges three occasions on which Huang made defamatory statements about her. On the first occasion, in March of 2020, Huang met with an insurance agent of Sky Vision and the agent's brother.[4] The complaint alleged that during the

---

[3] As noted by Xu in her opening brief, civil conspiracy is not a separate tort, but a theory of liability with respect to the defamation claim. (*City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 211.)

[4] The associated declarations indicate the two people who met with Huang were Luc Bin Wang and Ke Xiao. Both are

meeting, Huang defamed Xu by stating Xu had forged many documents and could not return to China due to having many unpaid debts.

On March 16, 2020, Sky Vision sent a cease and desist letter to Huang, urging her to stop making defamatory statements about Xu and Sky Vision.

On the second occasion, in August of 2020, Huang made defamatory statements about Xu to another insurance agent working with Sky Vision, by stating that Xu does not inform potential clients about the contents of the insurance policy, but instead cheats clients by telling them "bullshit" about the policy benefits.[5]

On the third occasion, Huang made defamatory statements to a Sky Vision client, stating Xu's license had been revoked, that Xu was a financial criminal in China, and after defrauding people

_____

independent life insurance agents and business partners. (See *Symmonds v. Mahoney* (2019) 31 Cal.App.5th 1096, 1104 [in evaluating an anti-SLAPP motion, we may consider the parties' pleadings as well as affidavits describing the basis for liability]; *Brill Media Co., LLC v. TCW Group, Inc.* (2005) 132 Cal.App.4th 324, 331 [noting same in context of commercial speech exemption], disapproved on another point in *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 25, fn. 3 (*Simpson*).)

[5] Xu submitted a declaration from the agent, Justin Lin, who declares that Huang told him that Xu does not tell potential clients about the risks associated with the policies she sells, and that Xu, in fact, physically alters policy illustrations by whiting out things that she does not want clients to see. Lin understood Huang's statements to mean she was accusing Xu of being unethical in her business dealings with clients.

in China had used that money to open Sky Vision in the United States.[6]

The complaint alleges that Huang made all of the aforementioned statements not only to slander or defame Xu, but to interfere with her economic prospects with agents, clients and potential clients and to promote the business interests of Auchel through unlawful means.

Huang and Auchel filed a special motion to strike the complaint pursuant to section 425.16. While Huang denied making the defamatory statements, she contended the statements qualified as protected activity under section 425.16, subdivision (e)(4), because they served the "public interest" of

---

[6] The associated declaration from client Christina Wang states that she and her travel business are tenants in the same building as Auchel, and that the statements were made to her during multiple visits by an employee of Huang between 2019 and early 2020. The employee stated that Xu was "her boss [Huang's] deadly sworn enemy." After finding all allegations in the complaint merited anti-SLAPP protection, the trial court proceeded to evaluate the potential merits of Xu's action—i.e., step two of the anti-SLAPP analysis. At this stage, the trial court ruled the declaration was inadmissible hearsay—since Wang learned of Huang's alleged statements through Auchel's "agent and associate." In determining whether the speech or conduct is protected at the initial stage, our focus is on the kind of claims alleged and does not concern " 'any evaluation of the merits of those claims, or even the adequacy of [the] . . . pleadings.' " (*JAMS, Inc. v. Superior Court* (2016) 1 Cal.App.5th 984, 993 (*JAMS*); *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1236 [admissibility and competence of evidence relevant to merits stage of anti-SLAPP inquiry].)

providing "consumer information."  She identified the operative allegations in the complaint as follows:

- "[Xu] could not return to China because she had many unpaid debts in China."
- "[Xu] had forged many documents."
- "[Xu's] license was revoked."
- "[Xu] was a financial criminal in China."
- "[Xu] defrauded many people in China and used that money to open Sky Vision in the United States."
- "[Xu] was afraid to go back to China because she owes so much money there."
- "[W]hen [Xu] sells insurance, she does not tell the potential client what is shown in the policy illustrations but instead cheats clients by telling them 'bullshit' about the policy benefits."

Huang asserted that "[d]ue to her expertise, [she] is often asked to review insurance policies issued by other companies, and requested to provide her professional opinion on the protections and risks associated with such insurance policies."  Huang then argued that all of her "alleged statements regarding [Xu's] and Sky Vision's fraudulent insurance practices, issuance of sham insurance policies, and financial misconduct in China, are at the very least, a warning of significant public interest to the community of businesses and individuals with whom [Xu] provides insurance and financial services."  Her statements therefore deserved protection as a matter of public interest impacting " 'a broad segment of society.' "  Huang further argued that Xu could not meet her burden of establishing that she would prevail on merits of her claims.  As such, the complaint should be dismissed in its entirety.

On January 19, 2021, Xu opposed the anti-SLAPP motion, arguing the commercial speech exemption, embodied in section 425.17, applied and wholly precluded anti-SLAPP protection—even where statements concern a public issue. Xu argued that Huang's challenged statements also did not qualify as protected activity under section 425.16 because they were merely examples of one business person maligning a competitor to try to win its business. Xu further claimed she had made a prima facie showing of merit in that the statements were defamatory in nature, and not privileged.

On January 25, 2021, in their reply, Huang and Auchel stated "there is no per se rule that the anti-SLAPP statute does not protect speech in the business context," and then proceeded to reassert their position that the allegations were protected under the catchall provision of section 425.16.

On March 3, 2021, the trial court granted the special motion to strike. The court noted that " '[c]ommercial speech that involves a matter of public interest . . . may be protected by the anti-SLAPP statute' " (quoting *L.A. Taxi Cooperative, Inc. v. The Independent Taxi Owners Assn. of Los Angeles* (2015) 239 Cal.App.4th 918, 927) and, without addressing any of the statutory criteria related to the commercial speech exemption in section 425.17, proceeded to find the alleged statements protected under the catchall provision of section 425.16, subdivision (e)(4).[7]

The court concluded that "Huang's alleged statements relating to [Xu's] business practice (i.e., forging documents, license being revoked, defrauding people, or failing to inform

---

[7] Huang and Auchel did not contend, and the court did not find, that Huang's alleged statements qualified as protected activity under subdivision (e)(1)-(3) of section 425.16.

8

potential clients what is shown in the policy illustration) provides important consumer information to the members of the communities served by [Xu]."

Citing Huang's declaration, the court noted that Huang has over 30 years of experience in the insurance field, and "is often asked by individuals in the Chinese communities to review insurance policies issued by other companies and is often requested to provide her professional opinion on the protections and risks associated with insurance policies." The court concluded that "Huang's alleged statements expose [Xu's] alleged insurance fraud, financial misconduct, lack of qualifications and unethical behavior and directly impacts a large number of people, including the '1,000 affiliated insurance agents[,] . . . clients and insurance companies' with whom [Xu] claims she works."

The court also concluded Xu had not established a probability of prevailing on the merits of her cause of action because the statements were privileged communications under section 47, subdivision (c).[8] The court dismissed the complaint with prejudice.

On March 5, 2021, Xu filed her timely notice of appeal from the trial court's order granting the anti-SLAPP motion.

---

[8] The court concluded that the conspiracy claim failed as a matter of law because one needs to have two persons or entities to have a conspiracy and a corporation cannot conspire with itself.

# DISCUSSION

## A. Anti-SLAPP Statute and Relevant Legal Principles

### 1. *Standards of Review*

"We review de novo the grant or denial of an anti-SLAPP motion" and "exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067; see also *Neurelis, Inc. v. Aquestive Therapeutics, Inc.* (2021) 71 Cal.App.5th 769, 784 (*Neurelis*).) Similarly, "[w]e review the applicability of the commercial speech exemption independently." (*Simpson*, *supra*, 49 Cal.4th at p. 26; see *Neurelis*, *supra*, at p. 786.)

" 'In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based.' " (*Symmonds v. Mahoney*, *supra*, 31 Cal.App.5th at p. 1104), and we accept as true the evidence favorable to the plaintiffs. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 326.)[9]

### 2. *Section 425.16: The Anti-SLAPP Statute*

"[S]ection 425.16 provides a procedure for the early dismissal of what are commonly known as SLAPP suits (strategic lawsuits against public participation)—litigation of a harassing nature, brought to challenge the exercise of protected free speech rights. The section is thus informally labeled the anti-SLAPP

---

[9] Although an anti-SLAPP motion need not be directed at a cause of action in its entirety, but "may be used to attack parts of a count as pleaded" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 393), Huang and Auchel argued that all statements were equally protected under section 425.16, subdivision (e)(4), and the trial court so found.

statute . . . ." (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 665, fn. 3.)  The Legislature enacted section 425.16 in 1992 "out of concern over 'a disturbing increase' in [SLAPP suits]" and, in so doing, "authorized the filing of a special motion to strike to expedite the early dismissal of these unmeritorious claims." (*Simpson*, *supra,* 49 Cal.4th at p. 21.)

Under section 425.16, a special motion to strike involves a two-step process.  First, the defendant must make a prima facie showing that the plaintiff's "cause of action . . . aris[es] from" an act by the defendant "in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue." (§ 425.16, subd. (b)(1).)  If the defendant satisfies this threshold burden, the plaintiff must then demonstrate a reasonable probability of prevailing on the merits.  (*Ibid*.)  If the defendant fails to meet his or her burden on the first step, the court should deny the motion and need not address the second step. (*Symmonds v. Mahoney*, *supra*, 31 Cal.App.4th at pp. 1103-1104.) Section 425.16 requires that courts construe the anti-SLAPP statute broadly.  (§ 425.16, subd. (a); *Symmonds*, *supra*, at p. 1103.)

3.    *Section 425.17:  The Commercial Speech Exemption to the Anti-SLAPP Statute*

"In 2003, concerned about the 'disturbing abuse' of the anti-SLAPP statute, the Legislature enacted section 425.17 to exempt certain actions from [protection]." (*Simpson*, *supra*, 49 Cal.4th at p. 21.)  One of two such exemptions[10] is commercial speech, codified in section 425.17, subdivision (c), as follows:

---

[10] The only other exemption in section 425.17 applies to actions "brought solely in the public interest or on behalf of the general public." (§ 425.17, subd. (b).)

11

"Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, including, *but not limited to, insurance, securities, or financial instruments*, arising from any statement or conduct by that person if both of the following conditions exist:

"(1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.

"(2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer, . . . notwithstanding that the conduct or statement concerns an important public issue." (Italics added.)

The purpose of this exemption is straightforward: A defendant who makes statements about a business competitor's goods or services to advance the defendant's business cannot use the anti-SLAPP statute against causes of action arising from those statements. (*Simpson, supra*, 49 Cal.4th at p. 30; see also *Benton v. Benton* (2019) 39 Cal.App.5th 212, 217; *JAMS, supra*, 1 Cal.App.5th at p. 996.)[11]

---

[11] As we explained in *Demetriades v. Yelp, Inc.* (2014) 228 Cal.App.4th 294, "Proponents of the legislation argued that corporations were improperly using the anti-SLAPP statute to burden plaintiffs who were pursuing unfair competition or false advertising claims. The proponents noted that law seminars were being conducted on the unfair competition law, 'encouraging

"If a complaint satisfies the provisions of the applicable [section 425.17] exception, it may not be attacked under the anti-SLAPP statute." (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 316; cf. *People ex rel. Strathmann v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487, 498 [whether a lawsuit falls within a [§] 425.17 exemption is " 'a threshold issue' " to be addressed " 'prior to examining the applicability of [§] 425.16' " and if the exemption applies, the "special motion to strike should [be] denied without reaching the merits of the motion"].) As a statutory exemption, it must be narrowly construed, and the plaintiffs bear the burden of proving each of its elements. (*Simpson*, *supra*, 49 Cal.4th at pp. 22, 26.)

In enacting section 425.17, the Legislature expressly carved out a subset of commercial speech that is *entirely* exempt from anti-SLAPP protection under section 425.16—"*notwithstanding that the conduct or statement concerns an important public issue.*" (§ 425.17, subd. (c)(2), italics added; see also *Club Members for an Honest Election v. Sierra Club*, *supra*, 45 Cal.4th at p. 316.)[12]

corporations to use the SLAPP motions as [a] new litigation weapon to slow down and perhaps even get out of litigation.' " (*Id.* at p. 309.)

[12] In proceeding directly to address whether the speech was protected under the catchall provision of the anti-SLAPP statute, the trial court adopted the following quote from *L.A. Taxi Cooperative, Inc. v. The Independent Taxi Owners Assn. of Los Angeles*, *supra*, 239 Cal.App.4th at p. 927, cited in Huang and Auchel's reply: "Commercial Speech that involves a matter of public interest, however, may be protected by the anti-SLAPP statute." That quote, in *L.A. Taxi*, however, is attributed to and derived from *Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal.App.4th 595, 600-601, a case that *preceded* enactment of section 425.17's commercial speech exemption. (See

13

Further, even if speech does not meet all elements of section 425.17, the commercial nature of the speech remains a relevant "contextual cue" in determining whether it merits protection under the catchall provision of section 425.16, subdivision (e)(4). (*FilmOn.Com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 140, 146 (*FilmOn*).) As such, "the identity of the speaker, the intended audience, and the purpose of the [speech]" informs the analysis under both section 425.17 *and* section 425.16. (*FilmOn, supra*, at p. 147.)[13]

---

*L.A. Taxi, supra*, at p. 927.) The *L.A. Taxi* court quoted this passage solely in reference to the catchall provision of section 425.16, subdivision (e) and found the speech did not qualify for anti-SLAPP protection. (*L.A. Taxi, supra*, at pp. 927-928.) However, the court separately analyzed the commercial speech exemption contained within section 425.17 and found that criteria satisfied—thereby removing the claims from anti-SLAPP protection. (*L.A. Taxi, supra*, at pp. 930-931.)

[13] In *FilmOn*, the lawsuit arose out of " 'false and disparaging' " statements made by defendant DoubleVerify in a report to its clients about FilmOn's digital network. (*FilmOn, supra*, 7 Cal.5th at p. 142.) The parties agreed that the section 425.17 exemption was inapplicable because DoubleVerify was not making statements about its own business and DoubleVerify was not a competitor of FilmOn—as required under section 425.17, subdivision (c)(1). (*FilmOn, supra*, at p. 147, fn. 4.) However, the factors that made the speech commercial in nature, including the business purpose of the speech and the intended audience, informed the court's determination of whether there was the requisite " 'degree of closeness' " between the challenged statements and the asserted public interest to warrant anti-SLAPP protection under section 425.16. (*FilmOn, supra*, at pp. 149-154.)

**B.    Xu Demonstrated the Commercial Speech Exemption Applies to the Statements Alleged in the Complaint**

In *Simpson*, *supra*, 49 Cal.4th 12, the Supreme Court separated the statutory criteria for the commercial speech exemption into four elements: "(1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and (4) the intended audience for the statement or conduct meets the definition set forth in section 425.17[, subdivision] (c)(2)"—i.e., an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer. (*Id.* at p. 30.)

On appeal, Huang argues only against application of the third element of the four-element test delineated by our high court in *Simpson*, contending that Xu failed to establish that the alleged statements were made for the purpose of securing sales in Huang's "insurance products."[14]  We therefore turn our attention

_____

[14] We note that the other three elements are supported by the record.  Huang is "primarily engaged in the business of selling . . . services." (*Simpson*, *supra*, 49 Cal.4th at p. 30.)  The statements at issue were "representations of fact about . . . a business competitor's *business operations*, goods, or *services*." (*Ibid.*, italics added; *JAMS*, *supra*, 1 Cal.App.5th at pp. 995-996.)  Further, "the intended audience for the statement or conduct"

15

to whether the statements at issue were made for the purpose of "promoting, or securing sales or leases of, or commercial transactions in, [Auchel's] goods or services." (*Simpson, supra,* 49 Cal.4th at p. 30 [third element].)

Xu argues that Huang made the alleged statements to insurance agents contracted with Sky Vision "to persuade them to do business with Auchel (i.e., to persuade them to place policies through Auchel)." Xu points out the complaint alleges that Huang made the statements, "in the course and scope of her employment with[ ] Auchel" in order to "unlawfully compet[e] for clients and agents." Xu further notes that insurance agent Justin Lin declared that Huang's purpose in meeting with him was to have him place insurance policies through her agency as an insurance agent, and expressly told Lin that if he wanted to work with her and Auchel, he had to terminate his relationship with Xu and Sky Vision. Agents Luc Bin Wang and Ke Xiao declared they also understood Huang's purpose in meeting with them was "to entice [them] to work with her in selling insurance products," and to influence them to cut off their relationship with Xu's business.

Huang and Auchel contend that the alleged statements were *not* made for the purpose of promoting or selling their goods or services. We address their specific contentions seriatim.

Huang and Auchel cite two paragraphs from Huang's declaration in which she denies making any of the statements alleged in the complaint and denies attempting to recruit any Sky

---

(*Simpson, supra,* at p. 30) was "an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer." (§ 425.17, subd. (c)(2).)

Vision agents. Of course, in reviewing the grant or denial of an anti-SLAPP motion, "we neither 'weigh credibility [nor] compare the weight of the evidence' " but " 'accept as true the evidence favorable to the plaintiff.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) The same holds true in reviewing whether the commercial speech exemption applies. (See *JAMS, supra,* 1 Cal.App.5th at p. 996.)

Huang and Auchel next observe that "allegations that [Huang and Auchel] attempted to recruit insurance professionals are not the same as proving [Huang] made a statement to promote or sell [Huang and Auchel's] insurance products" and then cite cases for the principle that the commercial speech exemption should be narrowly construed.

Although we agree that the exemption should be narrowly construed, Huang's specific statements were allegedly false and intended to increase sales of her services and products. On their face, these statements satisfy the third element and plain language of the statute. Further, in *Neurelis, supra,* 71 Cal.App.5th at pp. 787-790, the Court of Appeal held that the commercial speech exemption encompassed allegedly false statements made to investors by a pharmaceutical company about a rival company's pipeline drug while both companies were competing for FDA approval. In so holding, the court emphasized that the commercial speech exemption is not limited to cases involving "comparative advertising" claims—an assertion made by Huang and Auchel in their responding brief.[15]

---

[15] Quoting from general discussions in *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 492 and *JAMS, supra,* 1 Cal.App.5th at p. 994, Huang and Auchel state, without elaboration, that the commercial speech exemption was designed for "suits arising from 'comparative advertising' " and/or "is

Huang and Auchel also seek to support their position with the holding of *Taheri Law Group v. Evans*, *supra*, 160 Cal.App.4th at p. 492, wherein the court concluded the commercial speech exemption did not apply because, inter alia, defendants did not engage in any massive advertising campaign. However, the court's analysis in *Taheri* supports, rather than undermines, Xu's contention that the commercial speech exemption applies in this case.

In *Taheri*, a law firm alleged that another attorney improperly solicited its client by engaging in communications about pending litigation and subsequently seeking to enforce a prior settlement agreement on behalf of the client. (*Taheri Law Group v. Evans*, *supra*, 160 Cal.App.4th at p. 489.) The court rejected application of the commercial speech exemption only

_____

aimed squarely at false advertising claims." However, as observed by the *Neurelis* court, while many of the reported cases involving the commercial speech exemption involved false or misleading "advertising" claims (*Neurelis*, *supra*, 71 Cal.App.5th at p. 788), "[s]ection 425.17, subdivision (c) does not use the word 'advertising,' but instead, provides its own explanation regarding what the commercial speech exception covers." (*Ibid.*) Under section 425.17, subdivision (c)'s statutory criteria, statements made by a defendant to a customer (or third party likely to repeat the statements to a customer) about a competitor and its products or services do not qualify for anti-SLAPP protection. (§ 425.17, subd. (c); *Neurelis*, *supra*, at pp. 787-788 & fn. 5.)

In any event, the statutory criteria, as written, applies to the type of "comparative advertising," alleged to have occurred in this case: A business owner, operating in a highly regulated services industry accused her competitor of being unscrupulous in her business dealings with clients, thereby effectively elevating her own reputation for fair dealing above that of her competitor in an attempt to win over her clients and/or sales agents.

18

because "construing the commercial speech exemption to encompass a cause of action arising from advice given by a lawyer on a pending legal matter would serve to thwart the client's fundamental right of access to the courts, and specifically to the lawyer of his choice." (*Id.* at p. 491.)

The situation here does not implicate the qualifications and constitutional concerns recognized in *Taheri* as the reason for protecting statements that otherwise would fall within the literal criteria of the commercial speech exemption. (See, generally, *JAMS*, *supra*, 1 Cal.App.5th at p. 995 ["What matters for purposes of the commercial versus noncommercial speech analysis is whether the speech at issue is about the speaker's product or service or about a competitor's product or service, whether the speech is intended to induce a commercial transaction, and whether the intended audience includes an actual or potential buyer for the goods or services"].)

Contrary to Huang and Auchel's assertions, "[t]his is not the type of case for which the anti-SLAPP statute was intended" and is, instead, "the type of case to be covered by the commercial speech exception of section 425.17, subdivision (c)." (*Neurelis*, *supra*, 71 Cal.App.5th at pp. 790-791.) The fourth element has been satisfied. (See, e.g., *JAMS*, *supra*, 1 Cal.App.5th at p. 998 ["[T]he statements or conduct from which [the] causes of action arise is more 'commercial speech' than anything else. Whether or not the statements may be used for other purposes does not change the analysis"].)

## C. The Trial Court Also Erred in Concluding That Huang's Statements Are Protected Under the Anti-SLAPP Statute

Even were we to conclude that the commercial speech exemption does not categorically remove the statements from the

19

protection of the anti-SLAPP statute, we would nevertheless reverse the trial court ruling because the allegations in the complaint do not implicate activity protected under section 425.16.[16] Huang and Auchel asserted—and the trial court accepted—a theory of protected activity in which defendants were able to "[define] their narrow dispute by its slight reference to the broader public [interest]." (*FilmOn*, *supra*, 7 Cal.5th at p. 152.) However, as discussed in *FilmOn*, and as we explain below, such an attenuated connection is not enough to establish protected activity.

Section 425.15, subdivision (e)(4) defines protected activity to include "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) This inquiry requires a two-part analysis rooted in the statute's purpose. (*FilmOn*, *supra*, 7 Cal.5th at p. 149.)

The court must first ask what public issue or issue of public interest the speech in question implicates—a question answered by looking to the *content* of the speech. (*FilmOn*, *supra*, 7 Cal.5th at p. 149.) The court must then ask "what functional relationship exists between the speech and the public conversation about some matter of public interest"—a question answered by considering the *context* of the speech. (*Id*. at pp. 149-150.)

---

[16] Section 425.16, subdivision (e) defines an act in furtherance of speech or petition rights to include "*any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.*" (§ 425.16, subd. (e), italics added.) Subdivision (e)(4), as we have previously noted, is referred to as the catchall provision.

With regard to the "functional relationship" inquiry, the law does not "sort statements categorically into commercial or noncommercial baskets in analyzing whether they are covered by the catchall provision." (*FilmOn, supra,* 7 Cal.5th at p. 148.) Instead, any "contextual cues revealing a statement to be 'commercial' in nature—*whether it was private or public, to whom it was said, and for what purpose*—can bear on whether it was made in furtherance of free speech in connection with a public issue." (*Ibid.,* italics added.) Conduct " 'in furtherance of business considerations' " is less likely to qualify as protected activity under the catchall provision. (*Ibid.*)

The decision below suffers from the same infirmities as those identified in *FilmOn,* i.e., the failure to adequately consider the speaker, the audience, and the purpose of the speech. More specifically, the trial court identified "consumer information" as the issue of public interest to which all of Huang's alleged defamatory statements related, and it found that the information was important to "members in the communities served by [Xu]." Yet Huang's statements were *not* presented to a broader audience of general "consumers," but instead presented to a competitor's sales agents and business customer in a private setting. Whereas the trial court found a public interest served by Huang's experience in reviewing insurance policies, the alleged statements involve no analysis whatsoever of insurance policies but were instead targeted at the business operations of Xu and the services she provides, all while attempting to recruit Xu's sales agents.

As emphasized in *FilmOn,* "context matters." (*FilmOn, supra,* 7 Cal.5th at p. 154.) By failing to give due consideration to "whether [the speech] was private or public, to whom it was said, and for what purpose" (*id.* at p. 148), the trial court glossed over

21

such contextual cues to embrace the mistaken proposition that maligning the honesty and integrity of a competing businessperson is automatically "protected activity" because consumers have a general interest in avoiding dishonest businesspersons. The courts have repeatedly rejected such tenuous ties to a public issue. (See, e.g., *World Financial Group, Inc. v. HBW Ins.* & *Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1572; *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 111, overruled on another point in *Baral v. Schnitt, supra*, 1 Cal.5th at p. 396, fn. 11.)[17]

In concluding Huang's challenged statements qualified as protected activity, the trial court cited *Yang v. Tenet Healthcare Inc.* (2020) 48 Cal.App.5th 939, where a licensed physician sued a hospital and its staff members for defamation. The plaintiff accused the defendants of "falsely stating to 'healthcare providers,' 'medical practices,' her 'patients,' and 'members of the general public' " that the plaintiff lacked privileges for certain

---

[17] The trial court also reasoned that Huang's alleged statements "*impact[ ]* a large number of people," namely, the other agents and clients with whom "[Xu] claims she works." (Italics added.) This is beside the point. As Xu observed, if "consumer information"—regardless of context—were a sufficient matter of "public importance," then it would be difficult to image any speech about any business practice that would fall outside the anti-SLAPP statute: "The butcher, the baker, the candlestick maker would all be fair game, even when the allegations of tainted meat, stale bread, and cheap wicks are made privately by a direct competitor to solicit a new sales representative or customer." (See *Mann v. Quality Old Time Service, Inc., supra*, 120 Cal.App.4th at p. 111 ["the focus of the anti-SLAPP statute must be on the specific nature of the speech rather than on generalities that might be abstracted from it"].)

surgical procedures, was not qualified or competent to practice her specialties, was dangerous to patients and members of the hospital medical staff, and was currently under investigation for her conduct. (*Id.* at p. 943.)

Distinguishing *FilmOn*, the appellate court concluded that the statements were protected under section 425.16, subdivision (e)(4), primarily because hospitals bear primary responsibility for monitoring the professional conduct of physicians licensed in California and, through their peer review committees, oversee matters of public significance. (*Yang v. Tenet Healthcare Inc.*, *supra*, 48 Cal.App.5th at p. 947.)

In contradistinction to *Yang,* the statements here were made in private settings and for the purpose of increasing the sales of the speaker, who was not a neutral or disinterested "third party" ostensibly seeking "to aid and protect consumers" (cf. *Yang v. Tenet Healthcare Inc.*, *supra*, 48 Cal.App.5th at p. 948), but a direct competitor with a profit motive. Thus, the "contextual cues" clearly align with *FilmOn.* (*FilmOn, supra*, 7 Cal.5th at p. 148.)[18]

---

[18] Citing *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1549-1550—and the "ongoing controversy" or "ongoing discussion" principle espoused therein—Huang also claims that her alleged statements were protected because Xu is named as a defendant in a pending class action brought by a third party (the "Li case") against Pacific Life Insurance Company. In granting Huang and Auchel's motion, the trial court accepted this alternate theory.

Huang, however, cannot benefit from *Terry*. The *Terry* court held statements (in a church investigation report alleging the plaintiffs had an inappropriate sexual relationship with a minor church member) protected because they arose out of an "ongoing discussion" regarding the welfare of children and were

Huang and Auchel failed to meet their burden of establishing that the challenged statements qualify as protected activity under section 425.16, subdivision (e)(4).[19]

---

of interest to the church community. (*Terry v. Davis Community Church, supra,* 131 Cal.App.4th at p. 1550.) Huang's alleged statements to Sky Vision agents Luc Bin Wang and Ke Xiao were made in March 2020, *months before* the Li case was filed on August 6, 2020, and before Huang, according to her own declaration, was even aware of any lawsuit. Thus, these alleged defamatory statements were not made for the "purpose" of contributing to any public discussion of that issue. (See *FilmOn, supra,* 7 Cal.5th at p. 152.) Further, *FilmOn* emphasized that "the [*Terry*] court considered *that the speakers* were church leaders attempting to protect children in the church's youth groups, as evidenced by the fact that 'the matter was referred to the Davis Police Department for investigation.' " (*FilmOn, supra,* at p. 146, italics added.) Here, all contextual cues support our conclusion that Huang's statements were " 'in furtherance of business considerations' " and that none of them is worthy of anti-SLAPP protection. (*Id.* at p. 148.)

[19] In light of our decision, we need not reach the second step of the section 425.16 analysis—namely, whether there is a probability of success on the merits. (See *People ex rel. Strathmann v. Acacia Research Corp., supra,* 210 Cal.App.4th at p. 498 [where § 425.17 exemption applies, a special motion to strike is denied without reaching the merits of the motion]; see also *Baral v. Schnitt, supra,* 1 Cal.5th at p. 385 [second step reached only if the defendant makes the required showing as to protected activity].)

## DISPOSITION

The order granting the anti-SLAPP motion is reversed.  Xu shall recover her costs on appeal.


CRANDALL, J.*


We concur:


ROTHSCHILD, P. J.


BENDIX, J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| TIFFANY YAN XU,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HAIDI WENWU HUANG et al.,<br><br>    Defendants and Respondents. | B311883<br><br>(Los Angeles County<br>Super. Ct. No. 20PSCV00695)<br><br>ORDER CERTIFYING FOR<br>PUBLICATION |

THE COURT:

      The opinion in the above-entitled matter filed on December 16, 2021, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

CRANDALL, J.*       ROTHSCHILD, P. J.       BENDIX, J.

_____

     * Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.