Filed 5/3/23  Brar v. Sourdough & Co. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| GURPREET BRAR et al., | C095424 |
| Plaintiffs, Cross-defendants and Respondents, | (Super. Ct. No. 34202100304530CUBTGDS) |
| v. | |
| SOURDOUGH & CO., INC., | |
| Defendant, Cross-complainant and Appellant. | |

This case arises out of purported licensing agreements to operate sandwich shops under the trademark "Sourdough & Co."  The trial court granted a motion under Code of Civil Procedure section 425.16 filed by plaintiffs and cross-defendants Gurpreet Brar, Harman Brar, Amanpreet Toor, Sukhdev Singh, and Arvinbrar, Inc. (the licensees) to strike a cause of action for fraud and deceit in a cross-complaint filed by Sourdough & Co, Inc. (Sourdough).[1]  "Familiarly known as the anti-SLAPP statute, [section 425.16]

---

[1]  Undesignated statutory references are to the Code of Civil Procedure.

allows defendants to seek early dismissal of unmeritorious claims arising from protected speech and petitioning activities." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1004.)

On appeal, Sourdough argues the trial court erred in granting the licensees' anti-SLAPP motion because: (1) its claim for fraud and deceit is covered by the commercial speech exemption to the anti-SLAPP statute; (2) the fraud and deceit claim does not arise out of protected activity; and (3) it showed a probability of success on this claim.

We will affirm.

## I. BACKGROUND

The complaint filed by the licensees alleges the following:

In November 2018, Sukhdev Singh entered into a purported licensing agreement with Sourdough to use certain trademarks and trade secret recipes for the operation of a fast-casual sandwich shop. In March 2019, Singh, Amanpreet Toor, Gurpreet Brar, and Harman Brar entered into another purported licensing agreement with Sourdough for the operation of additional sandwich shops. These individuals subsequently assigned their rights under these agreements to Arvinbrar, Inc. Arvinbrar paid approximately five percent of gross sales to Sourdough.

In June 2020, the licensees notified Sourdough that they were rescinding the agreements and considered them unenforceable. In July 2021, the licensees filed the underlying action alleging numerous causes of action against Sourdough. As relevant to this appeal, the licensees alleged Sourdough violated the Franchise Investment Law (Corp. Code, § 31000 et seq.) by selling unregistered franchises. The licensees alleged that though the agreements were not called franchise agreements, the transactions met the elements of a franchise under Corporations Code section 31005, and Sourdough had not provided required disclosures.

Sourdough filed a cross-complaint against the licensees that alleged causes of action for breach of contract and for fraud and deceit. The second cause of action for fraud and deceit is the focus of this appeal. It alleges:

"13. At the time each [licensee] executed their respective license agreement(s) they represented to [Sourdough] (as Licensor) that they were aware that the license agreement was not a franchise, was not intended to be a franchise, and that Licensor may subsequently seek to obtain franchise rights in the future (see section 2.2).

"14. At the same time, [licensees] further represented to [Sourdough] that they understood and agreed that 'Licensor shall have no responsibility, and shall not undertake to direct Licensee's business operations and marketing plans' and that 'Licensor does not claim to have any valuable or proven successful business operations or methods of doing business, nor does Licensor offer Licensee any guidance, dictates, or recommendations regarding same.' They further represented that they were 'solely responsible to determine [their] own successful business methods and marketing plan, if any,' and acknowledged that 'the fees paid pursuant to [the license agreements] are consideration solely for Licensor's valuable intellectual property and the goodwill which Licensor's Marks, recipes, preparation methods, and trade dress have become known for.'

"15. At the same time, the [licensees] represented to [Sourdough] that they intended nothing in the agreements to be subject to any franchise or similar law, rule, or regulation, to which it would not otherwise be subject, of the state where the Restaurants are located or of the State of California. They further represented and warranted the following:

"Licensee represents and warrants that he/she/it has been represented by a licensed California attorney of its choice (__[e.g., MICHAEL BARETT]___) with respect to the negotiation and drafting of this Agreement and under guidance of said counsel has made its own determination that this Agreement complies with all applicable provisions of California law, including without limitation Corporations Code §§ 31000, et seq.

3

"16. The foregoing representations were false, and the [licensees] have taken positions in this lawsuit in direct contravention of their representations and warranties, all to the damage and detriment of [Sourdough], subject to proof at trial.

"17. [Sourdough] reasonably relied on the foregoing representations and warranties made by the [licensees], and would not have entered into the license agreements in the absence of such representations and warranties."

"18. [Sourdough] is entitled to recover both monetary and injunctive relief against each [licensee], subject to proof at trial." (Underscoring omitted.)

The licensees responded to the cross-complaint with a motion to strike the cause of action for fraud and deceit under the anti-SLAPP statute.

The trial court granted the motion. The court rejected Sourdough's assertion that its cause of action for fraud and deceit was exempt from the anti-SLAPP statute under the commercial speech exemption. Additionally, the court agreed with the licensees' assertion that this cause of action arose from protected activity because the element of resulting damage necessary to establish the cause of action relied solely on the filing of the licensees' complaint. The trial court found Sourdough did not "substantively counter" this argument nor did it "indicate that it can establish all of the elements of its claim of fraud without relying on [the licensees]' protected activity of filing the Complaint." The trial court found Sourdough had not established a probability it would prevail on its claims, because its damages derived from the licensees filing of their complaint and that filing was protected by the litigation privilege of Civil Code section 47.

Sourdough filed a timely notice of appeal.

No party filed a respondent's brief. Where no respondent's brief has been filed, we may decide the appeal on the record, the opening brief, and any oral argument by the appellant. (Cal. Rules of Court, rule 8.220(a)(2), (c).) Sourdough "still bears the 'affirmative burden to show error whether or not the respondent's brief has been filed,'

4

and we 'examine the record and reverse only if prejudicial error is found.' " (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1078.)

## II.  DISCUSSION

*A.      Statutory Background*

The anti-SLAPP statute provides:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

"Anti-SLAPP motions are evaluated through a two-step process.  Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged.  [Citations.]  If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)  Whether the commercial speech exemption applies is a first-step determination.  (*Demetriades v. Yelp, Inc*. (2014) 228 Cal.App.4th 294, 308.)

Our Supreme Court has described the " 'second step as a "summary-judgment-like procedure."  [Citation.]  The court does not weigh evidence or resolve conflicting factual claims.  Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.' " (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)  "[A] plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' " (*Ibid*.)

"The grant or denial of an anti-SLAPP motion is reviewed de novo." (*Monster Energy Co. v. Schechter, supra*, 7 Cal.5th at p. 788.)

5

*B.      Commercial Speech Exemption*

Sourdough argues the trial court erred in granting the licensees' anti-SLAPP motion because its claims are exempt from the anti-SLAPP statute under the commercial speech exemption set forth in section 425.17, subdivision (c).  We disagree.

Section 425.17, subdivision (c) provides, in relevant part, that the anti-SLAPP statute, section 425.16, "does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, . . . arising from any statement or conduct by that person if both of the following conditions exist:

"(1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.

"(2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer."

"[T]he language of section 425.17, subdivision (c) and subsequent case law indicate that the provision exempts 'only a subset of commercial speech'—specifically, comparative advertising." (*FilmOn.com Inc. v. DoubleVerify Inc*. (2019) 7 Cal.5th 133, 147.)  The exemption is construed narrowly.  (*JAMS, Inc. v. Superior Court* (2016) 1 Cal.App.5th 984, 992.)  " '[T]he party seeking the benefit of the commercial speech exemption[,] [has] the burden of proof on each element.'  [Citation.]  'We review the applicability of the commercial speech exemption independently.' "  (*Ibid*.)

Here, the trial court noted Sourdough appeared to argue it was a potential buyer or customer of the licensees but did not elaborate on this argument or supply any legal authority to support it.  The trial court also found the alleged statements reflect the licensees " 'understanding and intentions with respect to the subject trademark license

6

agreement, not representations of fact about [their] products, services, or business operations.' " The court also found the alleged misrepresentations were not made for the purpose of securing sales of or commercial transactions in the licensees' goods or services but rather for the purpose of obtaining rights to Sourdough's trademarks and recipes.

On appeal, Sourdough argues the representations alleged in its cross-complaint pertain to speech about the licensees' operation of restaurants under license from Sourdough. Further, Sourdough argues the licensees made these representations to secure the license agreements that would allow them to operate restaurants under Sourdough's brand. Sourdough still fails to adequately address how the intended audience of these representations was a potential buyer or customer within the meaning of the statute. We find no merit to Sourdough's assertion that it can avail itself of section 425.17, subdivision (c).

*C.      Arising from Protected Activity*

As set forth above, "[a]nti-SLAPP motions may only target claims 'arising from any act of [the defendant] in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . .' (§ 425.16, subd. (b).)" (*Park, supra*, 2 Cal.5th at p. 1062.) Sourdough argues the trial court erred in granting the licensees' motion because this first step requirement was not met.

"In deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

Under the anti-SLAPP statute, an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes . . . any written . . . statement or writing made before a . . . judicial proceeding." (§ 425.16, subd. (e)(1).) The filing of the licensees' complaint was

7

therefore a protected activity under the anti-SLAPP statute. (*Navellier v. Sletten, supra*, 29 Cal.4th at p. 90.) Sourdough's cross-complaint expressly alleges the licensees "have taken positions in this lawsuit in direct contravention of their representations and warranties, all to the damage and detriment of [Sourdough]." Sourdough nonetheless disputes that its cause of action for fraud and deceit arises from this protected activity.

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra*, 2 Cal.5th at p. 1062.) "[C]ourts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' " (*Bonni v. St. Joseph Health System, supra*, 11 Cal.5th at p. 1009.) "When a party pleads a cause of action that rests on allegations of multiple acts, a court must analyze each action to determine whether it is protected. [Citation.] Courts may consider the 'gravamen' of claims to determine whether particular acts are elements, as opposed to incidental background, but not to determine the essence of a mixed cause of action." (*Cordoba Corporation v. City of Industry* (2023) 87 Cal.App.5th 145, 151; see *Bonni, supra*, at p. 1010 [explaining a so-called " 'mixed cause of action' " is one "that rests on allegations of multiple acts, some of which constitute protected activity and some of which do not"].)

Our dissenting colleague misreads *Park* and *City of Cotati v. Cashman* (2002) 29 Cal.4th 69 by failing to appreciate that the latter involved an action for declaratory relief and " '[t]he fundamental basis of declaratory relief is the existence of an actual, present controversy over a proper subject.' " (*Id.* at p. 79, italics omitted.) Here, the cause of action at issue is one for fraud and deceit. As such, the relevant inquiry is not whether Sourdough "could demonstrate the existence of a bona fide controversy between the parties supporting a claim for declaratory relief without" Brar's lawsuit. (*Park, supra*, 2 Cal.5th at p. 1064.) Rather, we ask whether Sourdough could demonstrate the elements of fraud and deceit without Brar's lawsuit. Here, the pleadings and supporting declarations demonstrate it cannot. " ' " 'The elements of fraud, which give rise to the

8

tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " ' " (*Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn*. (2018) 19 Cal.App.5th 399, 428.) Sourdough argues its fraud and deceit claim is "premised upon" and "targets" misrepresentations made at the time the license agreements were entered into. While that may be true, it only renders the fraud and deceit claim a mixed cause of action because the cross-complaint alleges the complaint is the sole basis of resulting damages. Sourdough never directly addresses the trial court's concern that Sourdough did not indicate it could establish all of the elements of its claim without relying on the protected activity of the licensees' filing of the complaint for the resulting damage element. Nor has Sourdough improved upon its showing in this court. Paragraph 9 of the cross-complaint, cited only by our dissenting colleague, alleges various breaches of the license agreements, and not, as our dissenting colleague suggests, "a laundry list of damages alleged to have been suffered by Sourdough arising from Brar's fraud." (Dis. opn. at p. 2.) Sourdough has failed to demonstrate the trial court erred in concluding that the cause of action for fraud and deceit rose out of protected activity, and we proceed to the second step of the anti-SLAPP analysis. (*Bonni v. St. Joseph Health System, supra*, 11 Cal.5th at p. 1010.)

D. *Probability of Success*

Sourdough argues it showed the requisite probability of success on its fraud claim to defeat the licensees' motion at the second step of the anti-SLAPP analysis. We disagree. The trial court found Sourdough had not established a probability it would prevail on its claims because its damages derived from the licensees' filing of their complaint, and that filing was protected by the litigation privilege. (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 772.) Sourdough argues the harm that gives rise to its claim for damages "also occurred prior to the commencement of the litigation. That is, as

9

alleged in the Complaint, [it] would not have entered into the licensee agreements at all had it not been for the alleged fraud and deceit." Sourdough cites a declaration from its Chief Executive Officer stating, "[h]ad I been aware that Cross-Defendant had not consulted with counsel prior to signing his license agreements, I would not have entered into them on behalf of the Company." But this evidence goes to reliance: "Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239.) "[U]nless the plaintiff merely seeks to rescind the contract, it must suffer actual monetary loss to recover on a fraud claim." (*Id*. at p. 1240.) Sourdough does not seek recission and it cites no authority indicating its nonprivileged evidence was sufficient to demonstrate resulting damage or otherwise obviate the need to demonstrate resulting damage.

Sourdough has failed to demonstrate any error in the court's decision to strike its cause of action for fraud and deceit.

# III.  DISPOSITION

The order granting the anti-SLAPP motion is affirmed.  Because no respondent appeared in this appeal, no party shall recover costs.  (Cal. Rules of Court, rule 8.278(a)(5).)

/S/

_____

RENNER, J.

I concur:

/S/

_____

MAURO, J.

Hull, J. dissenting.

The majority opinion holds that Sourdough & Co., Inc.'s (Sourdough) cross-complaint, insofar as it alleges civil fraud against plaintiffs (Brar), is barred by application of what is commonly known as the "anti-SLAPP" statute, Code of Civil Procedure section 425.16. (Statutory section references that follow are to the Code of Civil Procedure.)

If I understand the majority opinion correctly, this is so because Sourdough's damages for fraud, an element of their cross-complaint, did not arise until Brar filed its complaint against Sourdough alleging various causes of action arising out of the parties' business transactions because only then was Sourdough "damaged." And the Brar complaint being a protected activity within the meaning of section 425.16, its filing prevents Sourdough from pursuing its cross-complaint for fraud.

It would appear the majority's decision that Sourdough's cross-complaint arose from Brar's protected activity in filing its complaint is grounded, without elaboration, on the majority's statement that, "Sourdough never directly addresses the trial court's concern that Sourdough did not indicate it could establish all of the elements of its claim without relying on the protected activity of [Brar's] filing of the complaint *for the resulting damage element.* [Emphasis added.]" (Maj. opn. at pp. 8-9.) I confess I am not sure what the phrase "for the resulting damage element" means but as noted above, it apparently means that Sourdough's damages only arose when, and were dependent upon, Brar's filing of its complaint.

If my interpretation of the majority's reasoning is correct, if it can be read to hold that a fraud cause of action necessarily violates section 425.16 if it depends in any part on the defrauding party's filing a complaint evidencing its fraud, this holding is far too broad. It is in the nature of a cross-complaint to allege and make reference to the cross-defendant's actions that evidence the alleged fraud even if, in appropriate circumstances

1

such as those we have here, *those actions* are memorialized or acknowledged in a cross-defendant's original and earlier filing of a complaint against the cross-complainant. If the proper allegations of fraudulent conduct are made in the cross-complaint, but only evidenced by the original complaint's allegations, that cross-complaint does not cross into the territory of the anti-SLAPP statute. Thus, if the proper allegations as to the elements of civil fraud, including damages, are made without reference to the allegations set forth in a lawsuit, that cross-complaint does not arise from protected activity, but instead from actions underlying the elements of fraud that occurred separate from the filing of the defrauding party's lawsuit.

Sourdough's action for fraud stumbles somewhat here by alleging in paragraph 16 of the cross-complaint that Brar's representations made at the time the parties to this lawsuit entered into these agreements "were false, *and* [*Cross-Defendants*] *have taken positions in this lawsuit in direct contravention of their representations and warranties . . . .*"

That is, the allegations of Sourdough's cross-complaint appear to depend in part for their truth on the positions Brar has set out in their complaint, the filing of which is activity that is protected by section 426.16.

This allegation, though, is not in and of itself the sole basis for Sourdough's claim of fraud. That is, Brar's filing of the complaint, a protected activity, did not constitute the fraud, but only provided *evidence* of its earlier fraudulent conduct when it entered into the contracts – long before the filing of the complaint – with Sourdough.

And there is more to the cross-complaint than paragraph 16. Paragraph 12 of the cross-complaint incorporates by reference paragraphs 1 through 10 of the cross-complaint. Among other things, those paragraphs include paragraph 9 which sets forth a laundry list of damages alleged to have been suffered by Sourdough arising from Brar's fraud, damages which a fair reading of the cross-complaint must necessarily have come into being before the filing of Brar's complaint.

Moreover, in paragraphs 13 of the cross-complaint, Sourdough alleges, tellingly, that, "[A]*t the time* [*Brar*] *executed their respective license agreement*(*s*)" Brar made certain representations to Sourdough. Again in paragraph 14 Sourdough alleges that Brar, at the time of the execution of the license agreements, made other representations and in paragraph 15 Sourdough alleges that Brar, again at the time it entered into the licensing agreements, made certain representations to Sourdough all of which, according to paragraph 16 were false and, upon which Sourdough relied to its detriment according to paragraph 17 of the complaint. All false representations made by Brar and relied on by Sourdough occurred when the agreements were entered into according to the cross-complaint's allegations.

Conceptually, a civil fraud occurs at the time the fraudulent conduct takes place and is relied upon by the defrauded party. Here, that is, at the time the license agreement was entered into which was an event far removed in time from the filing of Brar's complaint and was based upon actions that were factually distinct from that filing.

Analytically then, this holding should not have much to do with *resulting damages* but should instead talk about the extent to which the cross-complaint depended upon a protected activity for its basis.

In my view, the answer in this appeal lies with the holding in *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057 (*Park*) and the discussion and citations in *Park* to *City of Cotati v. Cashman* (2002) 29 Cal.4th 69 and *Navellier v. Sletten* (2002) 29 Cal.4th 82. I quote the discussion in *Park* at length below.

After beginning its analysis by observing that "a claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citations omitted.]" (*Park, supra,* 2 Cal.5th at p. 1062.) *Park* continued:

"Critically, 'the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech.' (*City of*

3

*Cotati*,[ *supra, 29 Cal.4th*] at p. 78; accord, *Equilon Enterprises*[ *v. Consumer Cause, Inc., 29* Cal.4th 53, 66].) '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 89; see *City of Cotati,* at p. 78 [suit may be in 'response to, or in retaliation for,' protected activity without necessarily arising from it].) Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' (*Navellier*, at p. 92, italics omitted.) 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e). . . .' (*Equilon Enterprises*, at p. 66, italics added.) In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.

"Thus, for example, in *City of Cotati v. Cashman*, *supra*, 29 Cal.4th 69, the plaintiff city filed a state suit seeking a declaratory judgment that its rent control ordinance was constitutional. The suit followed in time the defendant owners' federal suit seeking declaratory relief invalidating the same ordinance. In the state action, the defendants filed an anti-SLAPP motion alleging the suit arose from their protected activity of filing the federal suit. The motion, we explained, should have been denied because the federal suit formed no part of the basis for the state claim. The city's potential entitlement to a declaratory judgment instead arose from the parties' underlying dispute over whether the ordinance was constitutional, a dispute that existed prior to and independent of any declaratory relief action by the owners. (*Id*. at p. 80.)

4

"In contrast, in *Navellier v. Sletten*, *supra*, 29 Cal.4th 82, another case in which the defendant's protected activity was the prior filing of court claims, the prior claims were an essential part of the activity allegedly giving rise to liability. The *Navellier* plaintiffs sued for breach of contract and fraud, alleging the defendant had signed a release of claims without any intent to be bound by it and then violated the release by filing counterclaims in a pending action in contravention of the release's terms. Unlike in City of Cotati, the defendant was 'being sued because of the affirmative counterclaims he filed in federal court. In fact, but for the federal lawsuit and [the defendant's] alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis. This action therefore falls squarely within the ambit of the anti-SLAPP statute's "arising from" prong.' (*Navellier*, at p. 90.)

"While in both cases it could be said that the claim challenged as a SLAPP was filed because of protected activity, in that perhaps the City of Cotati plaintiff would not have filed suit had the defendant not done so first, in only *Navellier* did the prior protected activity supply elements of the challenged claim. *The City of Cotati plaintiff could demonstrate the existence of a bona fide controversy between the parties supporting a claim for declaratory relief without the prior suit, although certainly the prior suit might supply evidence of the parties' disagreement.* (Emphasis added.) In contrast, specific elements of the *Navellier* plaintiffs' claims depended upon the defendant's protected activity. The defendant's filing of counterclaims constituted the alleged breach of contract. (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 87.) Likewise, the defendant's misrepresentation of his intent not to file counterclaims, a statement we explained was protected activity made in connection with a pending judicial matter (see § 425.16, subd. (e)(1), (2)), supplied an essential element of the fraud claim (*Navellier*, at pp. 89–90). *Together, these cases reflect what we have described elsewhere, in a non-SLAPP context, as 'a careful distinction between a cause of action based squarely on a*

5

*privileged communication, such as an action for defamation, and one based upon an underlying course of conduct evidenced by the communication.'* (*White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870, 888.)" (*Park, supra,* 2 Cal.5th at pp. 1063-1064, emphasis added.)

Here, the above discussion in *Park* and, in particular, those portions of the discussion that I have emphasized, leads me to the opinion that this SLAPP motion should have been denied. Conforming what I have emphasized above to the parties we have before us, Sourdough "could demonstrate the existence of a bona fide controversy" here without Brar's lawsuit even though the Brar lawsuit might provide evidence of Brar's alleged fraud. That result also follows if we make "a careful distinction between a cause of action based squarely on a privileged communication, such as an action for defamation, and one based upon an underlying course of conduct *evidenced*" in part, by the allegations of the Brar lawsuit.

I would reverse the trial court's order granting the motion to strike the second cause of action of the cross-complaint.

/S/

_____
HULL, Acting P. J.

6